UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID LEE CARPENTER, JR.,

    Petitioner,

v.

PAUL KLEE,

    Respondent.

CASE NO. 2:10-10771
HONORABLE GERALD E. ROSEN
CHIEF UNITED STATES DISTRICT JUDGE

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND A CERTIFICATE OF APPEALABILITY**

David Lee Carpenter, Jr. ("petitioner"), incarcerated at the Cooper Street Correctional Facility in Jackson, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by attorney Corbett O'Meara, petitioner challenges his conviction for third-degree criminal sexual conduct, M.CL.A. 750.520d(1)(b); and assault with intent to commit criminal sexual conduct, M.C.L.A. 750.520g(1). For the reasons stated below, the application for a writ of habeas corpus is DISMISSED WITH PREJUDICE.

## I. BACKGROUND

Petitioner was convicted of the above offenses following a jury trial in the Hillsdale County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

The testimony at trial indicated that while the victim was "passed out" after drinking several alcoholic beverages, defendant took her to his apartment, took off all her clothes and tied her hands and feet to a bed. The last thing the victim remembered was being at a bar with defendant and another acquaintance before the incident at issue. The victim woke up in defendant's apartment and did not know where she was. She was naked, tied to a bed, and defendant, who was also naked, was kissing and fondling her. The victim testified that she repeatedly told defendant to stop. His response to her was, "Shut up, you bitch," or something similar. When the victim repeatedly screamed, defendant told her to stop screaming and hit her in the face, backhanded her in the face and hit her with a spatula on the butt. Defendant put his fingers inside the victim's vagina and said, "Shut up; behave." The victim testified that defendant forced her to perform oral sex on him by threatening her with a spatula and saying that if she did not perform oral sex on him, he would stick the spatula inside her vagina.

Defendant did not untie the victim until an acquaintance of the victim's arrived at defendant's apartment and pounded on his door looking for the victim. It was at this time that defendant told the victim that he would kill her if she told anyone about what he had done to her. The testimony indicated that when the victim came to the door in her bra and panties, she was hysterical, frightened, scared, crying, sobbing and shaking.

*People v. Carpenter,* No. 277861, * 2 (Mich.Ct.App. September 23, 2008).

Petitioner's conviction was affirmed on appeal. *Id;, lv. den.* 483 Mich. 895, 760 N.W.2d 490 (2009).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Is Michigan's sentencing guideline scheme a mandatory scheme that violates federally guaranteed constitutional rights to have all factors which increase a defendant's sentence proven beyond a reasonable doubt?

II. Was Appellant denied the effective assistance of counsel where defense counsel failed to produce evidence that demonstrated that the "victim" had been beaten by her husband the day of the offense and therefore had a motive to manufacture a false story when she was caught cheating?

2

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA [Antiterrorism and Effective Death Penalty Act] thus imposes a 'highly deferential standard for

3

evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).

### III. DISCUSSION

**A. Claim # 1. Petitioner is not entitled to habeas relief on his claim that the trial court incorrectly scored petitioner's sentencing guidelines range by considering factors which had not been proven beyond a reasonable doubt.**

Petitioner first alleges that the trial court judge violated his Sixth Amendment right to a trial by jury by using guidelines and sentencing variables that were not submitted to a jury and proven beyond a reasonable doubt. In support of his claim, Petitioner relies on *Blakely v. Washington*, 542 U.S. 296 (2004), in which the U.S. Supreme Court held that other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 301 (citing *Apprendi v. N.J.*, 530 U.S. 466, 490 (2000)).

Petitioner is not entitled to habeas relief on his claim. *Blakely* involved a trial court's departure from Washington's determinate sentencing scheme. Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence within a minimum and maximum sentence. *See People v. Claypool*, 470 Mich. 715, 730, n. 14, 684 N.W.2d 278 (Mich. 2004); *People v. Drohan*, 475 Mich. 140, 160-61, 715 N.W.2d 778 (Mich. 2006)(both citing M.C.L.A. 769.8). "[M]ichigan's

4

sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set a minimum sentence." *Drohan*, 475 Mich. at 161. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock*, 469 Mich. 247, 255, n. 7, 666 N.W.2d 231 (Mich. 2003) (citing M.C.L.A. 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *Claypool*, 470 Mich. at 730. Therefore, Michigan's indeterminate sentencing scheme is unaffected by the U.S. Supreme Court's holding in *Blakely*. *Drohan*, 475 Mich. at 164.

The holding in *Blakely* is inapplicable to petitioner's sentence. Indeterminate sentencing schemes, unlike determinate sentencing schemes, do not infringe on the province of the jury. *Blakely*, 542 U.S. at 304-05, 308-09. The Supreme Court clarified this in *Cunningham v. California*, 549 U.S. 270 (2007), when the Supreme Court explained that states may retain determinate sentencing by requiring the jury "to find any fact necessary to the imposition of an elevated sentence" or by allowing judges "to exercise broad discretion . . . within a statutory range, which everyone agrees, encounters no Sixth Amendment shoal." *Id.* at 294 (quoting *United States v. Booker*, 543 U.S. 545, 565 (2002)("[w]hether chosen by judge or the legislature, the facts guiding judicial discretion below the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt" and the judge "may impose the minimum, the maximum, or any other sentence within the range without seeking further authorization from those [grand and petit] juries-and without

5

contradicting *Apprendi*."), and *Id.* at 569-70 (Breyer, J. concurring) (agreeing that "*Apprendi* does not apply to mandatory minimums.").

The holdings in *Apprendi* and *Blakely* therefore do not apply to a judge's factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009); *See also Montes v. Trombley,* 599 F.3d 490, 495 (6th Cir. 2010) (the *Blakely-Apprendi* rule requiring any fact that increases the penalty for a crime beyond the prescribed statutory maximum to be submitted to a jury and proved beyond a reasonable doubt does not apply to laws that set the maximum sentence by statute but that permit a judge to determine the minimum sentence through judicial factfinding, and does not preclude a judge from utilizing the preponderance-of-the-evidence standard when finding facts related to sentencing). As noted by the Sixth Circuit, "[T]he Sixth Amendment gives a criminal defendant the right to have a jury find any fact that increases the *maximum* sentence the defendant faces, not any fact that increases the *minimum* sentence." *Arias v. Hudson*, 589 F.3d 315, 317 (6th Cir. 2009)(citing *McMillan v. Pennsylvania*, 477 U.S. 79 (1986))(emphasis original). Indeed, "[B]y clarifying that minimum sentences fall outside *Apprendi's* scope, *Harris* forecloses [petitioner's] claim." *Chontos,* 585 F. 3d at 1002. The Sixth Amendment jury trial right merely "ensure[s] that the defendant 'will never get more punishment than he bargained for when he did the crime'"; it does "not promise that he will receive 'anything less' than that." *Id.* (quoting *Harris*, 536 U.S. at 566 (quoting *Apprendi*, 530 U.S. at 498 (Scalia, J., concurring)).

When petitioner violated the third-degree criminal sexual conduct statute, he bargained that if a jury found him guilty, that he could face up to fifteen years in prison. Likewise, when he violated the assault with intent to commit criminal sexual conduct statute, he bargained that he could face up to ten years in prison if he was found guilty by a jury. Therefore, "regardless of the ways that judicial factfinding and Michigan's guidelines affected his minimum sentence," petitioner "got no more than he bargained for." *Chontos,* 585 F.3d 1002. Because Michigan's sentencing laws create an indeterminate-sentencing scheme, it does not violate petitioner's due-process rights or his right to a jury trial. *Montes,* 599 F. 3d at 497. Petitioner is not entitled to habeas relief on his *Blakely* claim. *Id.*

**B. Claim # 2. Petitioner was not deprived of the effective assistance of counsel.**

Petitioner next argues that he was denied the effective assistance of trial counsel. Petitioner alleges that his attorney was ineffective for failing to present evidence that the victim had been beaten by her husband on the day of the crime. Petitioner claims that this evidence would have corroborated petitioner's defense that the victim falsely accused petitioner of sexually assaulting her to protect herself from a violent and abusive husband.

The Michigan Court of Appeals rejected petitioner's claim:

The evidence supports the conclusion that the jury was implicitly informed that the victim had a physical altercation with her husband on the morning of October 14, 2006. Evidence was presented that there was an altercation, and the victim's husband had "gone with the cops." Further, defense counsel argued and defendant asserted that the victim was acting consensually and only became concerned about what she was doing when

7

> she thought her husband would find out about it. Although the record does not indicate that defense counsel specifically elicited testimony about the physical nature of the altercation between the victim and her husband and about any fear she may have of her husband, the decision not to elicit testimony on these matters falls in the category of trial strategy. It would be inappropriate for this Court to substitute its judgment for defense counsel's judgment in this matter. The issue was raised before the jury, even if not to the extent desired by defendant.
>
> The record does not support defendant's contention that he received ineffective assistance of counsel. Defense counsel did not make such a serious mistake without which the results of defendant's trial might reasonably have been different.
>
> *Carpenter,* Slip. Op. at * 3-4 (internal citations omitted).

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect

but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Additionally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* Finally, the Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

In the present case, defense counsel in his opening statement argued that the victim had engaged in "kinky" sex with petitioner but panicked when she heard her friend knock on the door, because she was a married woman and could not afford to be caught engaged in a sexual act with another man. (Tr. 2/6/2007, pp. 97-98). The victim acknowledged during her testimony that there had been an altercation between herself and her husband the day of the sexual assault and that the police had taken him away from their home. (*Id.* at pp. 104-05). Defense counsel elicited admissions from the victim on cross-examination that when she went home to change clothes before going out with petitioner that evening that she did not leave a note for her husband as to her whereabouts, nor did she attempt to call her husband that night to tell him where she was. (*Id.* at pp. 140-41). Counsel also asked Brian Kratzer, the

9

victim's friend, whether he knew her husband, but the judge sustained the prosecutor's objection to the question on relevancy grounds. (*Id.* at p. 170). Petitioner also testified that although the victim consented to engaging in sex with him which involved bondage and the victim being tied up (*Id.* at pp. 224-25), petitioner testified that the victim panicked when she heard her friend knock on the door and told him "that she could not do this, that she was married and wanted me to let her go." (*Id.* at p. 227). In his closing argument, defense counsel again argued that the victim had consented to engage in sexual activity with petitioner but later stated that she was a married woman and should not be engaging in sex with him. (*Id.* at p. 254).

In the present case, defense counsel presented sufficient evidence and argument to the jury concerning a motive for the victim to fabricate a sexual assault charge against petitioner, namely, that she was a married woman who had been caught engaging in sexual activity with petitioner. The jury also heard evidence from the victim herself that she and her husband had engaged in an altercation earlier that day and that the police had taken him away from her home, thus providing them with a basis to conclude that the victim might fear for her physical safety if her husband learned that she had engaged in sexual activity with another man. Petitioner has failed to overcome the presumption that counsel's decision not to present additional evidence concerning the victim's motive to fabricate a sexual assault charge against petitioner was sound trial strategy. *See Robinson v. Lafler*, 643 F. Supp. 2d 934, 939 (W.D. Mich. 2009)(Defense counsel was not ineffective in failing to call additional witnesses to testify about victim's motive to lie; decision was reasonable and within the range of

10

professionally competent assistance.). Through the testimony of the witnesses and in his opening and closing argument, defense counsel gave the jurors a valid motive for the victim to make up a false rape allegation against petitioner, namely, that she was a married woman who had been caught having sex with another man and therefore needed to accuse petitioner of raping her to avoid her husband's wrath. Even in the absence of evidence that the victim had been physically assaulted by her husband, it would be within the realm of common sense for the jurors to know that a married person would fear the various negative consequences that could occur if their spouse discovered that they had been engaged in extramarital sexual activity. Petitioner is not entitled to habeas relief because he has failed to show how providing the jury with an alternate or additional reason for the victim to lie, namely, the fact that she had been assaulted by her husband that day, would have affected the jury's decision to credit the victim's testimony, particularly where her friend testified that when the victim came to the door in her bra and panties, she appeared "hysterical, frightened, scared, crying, sobbing and shaking". *See U.S. v. Hynes,* 467 F.3d 951, 970 (6th Cir. 2006). Petitioner is not entitled to habeas relief on his second claim.

## IV. CONCLUSION

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the

petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).

### V.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

                                     s/Gerald E. Rosen  
                                     Chief Judge, United States District Court

Dated:  January 24, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 24, 2011, by electronic and/or ordinary mail.

                          s/Ruth A. Gunther
                          Case Manager